# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE _____ **DIVISION**

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C. § 1983

CHAD C COVERT _____,

Inmate # R67023 _____.

   (Enter full name of Plaintiff)

vs.

CASE NO: 4:15-cv-00031-MW-CAS

     (To be assigned by Clerk)

*Corizon Health, INC., et al.;*

*C. Elaier / Asst Warden*

*Amy Kirkland / A.R.N.P.*

*D.E. Ward / LPN*

(Enter name and title of each Defendant.

If additional space is required, use the

blank area below and directly to the right.)

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

PROVIDED BY
LIBERTY CI

JUN - 1 2015

FOR MAILING

Rec'd 0603'15 USDc Fln 4PM 1234

## I.     PLAINTIFF:

State your full name, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:     CHAD C COVERT

Inmate Number          R67023

Prison or Jail:        Liberty C.I.

Mailing address:       11064 NW Dempsey Barron Rd

                       Bristol, Fla, 32321

## II.    DEFENDANT(S):

State the name of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for every Defendant:

(1)   Defendant's name:    Corizon Health, INC.

      Official position:    Medical Provider

      Employed at:          Florida Department of Corrections

      Mailing address:      105 WestPark Drive

                            Brentwood, TN, 37027

(2)   Defendant's name:    C. Swier

      Official position:    Asst. Warden

      Employed at:          Florida Department of Corrections

      Mailing address:      _____

                            _____

(3)   Defendant's name:    Amy Kirkland

      Official position:    A.R.N.P.

      Employed at:          Florida Department of Corrections / Corizon Healthcare Provider

      Mailing address:      _____

## ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS

2

(4)     Defendant's name:  D. E. WARD
        Official position:   L.P.N.,
        Employed at:        Florida Department of Corrections / Corizon Health Care
                            Provider
        Mailing address:

### III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

### IV.   PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE.  IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes(  )                    No(X)

   1.   Parties to previous action:
      (a)   Plaintiff(s): _____
      (b)   Defendant(s): _____
   2.   Name of judge: _____   Case #: _____
   3.   County and judicial circuit: _____
   4.   Approximate filing date: _____
   5.   If not still pending, date of dismissal: _____
   6.   Reason for dismissal: _____
   7.   Facts and claims of case: _____
      _____

**(Attach additional pages as necessary to list state court cases.)**

B.   Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes(  )                    No(X)

   1.   Parties to previous action:
      a.   Plaintiff(s): _____
      b.   Defendant(s): _____
   2.   District and judicial division: _____
   3.   Name of judge: _____   Case #: _____
   4.   Approximate filing date: _____
   5.   If not still pending, date of dismissal: _____
   6.   Reason for dismissal: _____

3

7.      Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.      Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes(   )                    No( X )

If YES, describe each action in the space provided below.  If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1.      Parties to previous action:
        a.      Plaintiff(s): _____
        b.      Defendant(s): _____
2.      District and judicial division: _____
3.      Name of judge: _____   Case #: _____
4.      Approximate filing date: _____
5.      If not still pending, date of dismissal: _____
6.      Reason for dismissal: _____
7.      Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list cases.)**

D.      Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service?  If so, identify each and every case so dismissed:

Yes(   )                    No( X )

1.      Parties to previous action:
        a.      Plaintiff(s): _____
        b.      Defendant(s): _____
2.      District and judicial division: _____
3.      Name of judge: _____   Case Docket # _____
4.      Approximate filing date: _____   Dismissal date: _____
5.      Reason for dismissal: _____

4

6.      Facts and claims of case: _____

_____

**(Attach additional pages as necessary to list cases.)**

## V.      STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  <u>Do not make any legal arguments or cite to any cases or statutes.</u>  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

## JURISDICTION AND VENUE

1.    This is a civil action for money damages brought under the provisions of sections 1331, 1332 (a), and 1343 (a)(1)(3)(4), of Title 28 and §§ 1983 of Title 42 of U.S.C. and the First and Eighth Amendments to the United States Constitution, and the common law of the State of Florida.  The amount in controversy exceeds the sum of $75,000.00.

2.    Jurisdiction is based upon 28 U.S.C. 1331, and 1343(3), for this forum to entertain the inserted constitutional claims within this complaint, and State claims under 28 U.S.C. § 1367 (a).

3.    Venue is proper in this court because all of the "wrongful acts" complained of occurred in Wakulla County, Florida.

4.    During all times mentioned in this complaint, Defendant CORIZON HEALTH, INC., was the entity for the aforementioned subordinates, (Defendants WARD, and KIRKLAND), and through the "wrongful acts" or its subordinates was acting in its official capacity, and is being sued in the same capacity.

5.    During all times mentioned in this complaint, defendant KIRKLAND was a nurse employed by Corizon Health Inc., to provide adequate healthcare services to the inmate population within the Florida Department of Corrections, and was acting in her individual and official capacity, and is being sued in both capacities.

6.    During all times mentioned in this complaint, defendant WARD was a nurse employed by Corizon Health Inc., to provide adequate healthcare services to the inmate population within the Florida Department of Corrections, and was acting in her individual and official capacity, and is being sued in both capacities.

7.    During all times mentioned in this complaint, defendant KIRKLAND was a nurse  employed by Corizon Health Inc., to comply with the health care policy and

PAGE 5—V-2

service to the inmate population within the Florida Department of Corrections, and was acting in her individual and official capacity, and is being sued in both capacities.

8.    During all times mentioned in this complaint, defendant SWIER was Assistant Warden for Wakulla Correctional Institution, Florida Department of Corrections, to comply with the compilation of statutory provisions, administrative rules and policies of Department and was acting in her individual and official capacity; however, she is being sued in her individual capacity.

9.    During all times mentioned in this complaint, each named defendant was acting "under color of State law", that is, under the color of the Constitution, statutes, laws, rules, policies, administrative codes, procedural manuals, and all directives of the State of Florida.

10.    During all times mentioned in this complaint, each Defendant named was bound by federal and state law to comport viz: themselves within the scope of the Constitution.

Plaintiff / Petitioner, Chad C. Covert, files this action against the named Defendants for the reasons: inadequate medical care, deliberate indifference, and retaliation, with which is in violation of his First, and Eighth Amendment rights under the U.S. Constitution and Plaintiff's claim under U.S.C.A. § 1983 and ADA, and rights of prisoners.

Statement of Facts:

1.     On or about January 12, 2012, plaintiff arrived at Orlando Reception Center for the Florida Department of Corrections. Within the first week of plaintiff's arrival he was vomiting up everything plaintiff ate or drank. After vomiting up blood plaintiff declared a medical emergency. As a result, plaintiff was transferred to Gulf C.I. Annex, around February 6, 2012. Upon arriving at Gulf, plaintiff was still vomiting up everything that he ate and drank, and occasionally blood. The medical symptoms that plaintiff was experiencing including heartburn. The plaintiff was Dr. Mossinbrug, around the end of February or around the beginning of March, who proscribed Omeprazole 20 mg. twice daily.  After two months, plaintiff had a follow-up appointment with Dr. Mossinbrug and his dose was decreased to once a day. Instead of 40 mg. of Omeprazole which was working, plaintiff was taking only 20 mg., which was working for only 8 to maybe 12 hours a day.

2.     On April 30, 2012, plaintiff wrote a request to medical about his medicine being decreased and now taking Omeprazole 20 mg. once daily was not working.  Plaintiff was told to address this issue with a sick-call. On 5/24/2012, plaintiff signed up for sick-call for the same issue that was addressed on the request on 4/30/12.

3.     On 5/16/12, plaintiff was transferred to Wakulla C.I. Annex.  On 5/24/12, plaintiff signed up for sick-call regarding about his "acid reflux" or heartburn acting up in the evening time, and about his medicine being decreased. The plaintiff has

PAGE 9a

submitted uncountable "sick-calls" throughout his first year in the Florida Department of Corrections, and without a copy of plaintiff's medical jacket (medical records) plaintiff cannot say how many or the exact dates and times for each request.

4.     Sometime in 2012, ARNP Ms. Pilisken treated plaintiff for H-Pylori, which is a 14 day treatment.   Upon completing this treatment plaintiff still had the same symptoms and issues when plaintiff ate or drank in the evening time after dinner. Around the end of September or the beginning of October 2012, plaintiff was moved to the main unit or Wakulla C.I. plaintiff continued to sign-up for sick-call for vomiting and occasionally blood due to acid reflux.

5.     On 12/10/12, plaintiff saw MS.   KIRKLAND / A.R.N.P., and she proscribed plaintiff Zantac 150 mg. twice daily, while plaintiff was on Omeprazole 20 mg. once daily.   When plaintiff asked to be referred to a doctor, MS.   KIRKLAND refused plaintiff further attention, she curtly stated, "You just have good old American heart burn," and "...this is what you get when you come to prison," and "...that the State is pinching pennies."   She refused to put plaintiff on Omeprazole 20 mg. twice daily. Furthermore, she prescribed plaintiff Ibuprofen for back pain. She completely ignored that plaintiff had any stomach issues or the fact that one of the main side effects of Ibuprofen is that it eats holes in the stomach liner, and one of the warnings states—Do not use if you have: bleeding problems.   The Ibuprofen 600 mg., exacerbates my stomach problems by—eating up my stomach liner and asthma problems.

6.     On 12/30/12, plaintiff filed a grievance, grievance log #1212-118-044.

7.     On 12/30/12, plaintiff vomited blood after plaintiff ate, and did a medical emergency.   Later on in the same day, after dinner, plaintiff vomited blood again-plaintiff showed the blood to Sgt./Ms. Battles, and she sent plaintiff back to medical.

PAGE 9b

8.    Plaintiff found himself in confinement, which plaintiff was out of retaliation, sometime in January 2013, for the grievance plaintiff wrote (cited above).

9.    On 1/15/13, while in confinement at the Wakulla C.I., plaintiff declared a medical emergency.  Nurse/Ms. A. Ferrihy Tran, LPN, responded and witnessed the blood that Plaintiff had vomited in the toilet.

10.    On 1/16/13, grievance log #1212-118-044, that was filed on 12/12/2012, was denied.  Plaintiff did not appeal because he was refused his property and threatened by Defendant Swier while in confinement, that if he continued to file grievances he'll get several DR's (disciplinary reports) which put the plaintiff in fear.

11.    Upon being in the county jail for outside court on 2/5/13, plaintiff saw a gastroenterologist around the end of February due to vomiting acid, food, water, and blood up.

12.    On 4/22/13, or around this time, the plaintiff went to have an upper G.I. scope done, on the outside of Pinellas County jail ( Have to obtain medical records from the Pinellas County jail to confirm these appointments  and diagnoses).

13.    Plaintiff was diagnosed with GERD; G.I. excessive stomach acid; and that the tissue around plaintiff's esophagus rips and causes the plaintiff to bleed.

14.    Upon both consultations plaintiff leaned that he is not to consume:
      I.    Ibuprofen;
      II.   Zantac and Omeprazole, along with other stomach medications are not to be mixed together, because they have different chemical;
      III.  Tegretol / Carbamazepine, and Omeprazole are not to be mixed together because it counteracts one another;
      IV.   Coffee;
      V.    Chocolates;
      VI.   Peppers; Tomatoes; or any food that has high acid contents;

And to not take any medicines that counteract with Omeprazole.  He prescribed plaintiff 20 mg. TWICE a day and tums, two tabs twice a day.  And that plaintiff would have to take these medications for the rest of his life.

15.    Upon returning of prison, plaintiff's Omeprazole 20 mg. Once daily had expired and plaintiff had started vomiting up everything he ate and drank again.

16.    Plaintiff did sick calls after sick call, and plaintiff told the nurses about the findings by the outside gastroenterologist and offered to sign a medical release form, so they can obtain these records from Pinellas County jail.  It took almost or more than a month to sigh a medical release form.

17.    MS. KIRKLAND / A.R.N.P., prescribed me Zantac 150 mg. Twice daily.  Even though plaintiff was taking the Zantac, plaintiff was in constant pain after every meal, and plaintiff made it known to MS. KIRKLAND.  Plaintiff could not eat normally, plaintiff was deprived sleep, school, religion services, working out, and interaction with others on a daily basis due to the pain.

18.    On 8/21/13, as plaintiff was leaving from his appointment with MS. KIRKLAND / A.R.N.P., about the plaintiff vomiting everything up and blood, plaintiff said, "I'm going to file another grievance because she did not want to give plaintiff the right medication and plaintiff ended up getting a DR (disciplinary report) for something that the plaintiff never said.  Also, plaintiff felt that this was a retaliation act for filing another grievance.

19.    It seems to the plaintiff that every grievance that Plaintiff filed against medical, plaintiff has received a DR for something plaintiff did not do or say.

20.    On 8/9/13, plaintiff's grievance (Log 3 1307-118-091) was denied.  Furthermore, in confinement with the pending DR which  plaintiff received for "disrespect."

21. On 8/10/13, Nurse Johnson witnessed a little blood in the toilet that plaintiff had vomited.

22. Plaintiff went to Lake Butler R.M.C., on the order that A.R.N.P., Ms. Pilisken filled out on 1/16/13, while plaintiff was in confinement at Lake Butler R.M.C., is when plaintiff received the denied grievance (Log 3 1307-118-091) and did not appeal it due to fear of getting another DR and physically abused.

23. Also, in confinement at Lake Butler R.M.C., plaintiff was vomiting up everything Plaintiff ate or drank and blood.

24. Plaintiff put in several sick calls to see the doctor while Plaintiff was in confinement at Lake Butler R.M.C.   Plaintiff ended-up seeing a doctor about all his stomach problems, and about his seizure medication counteracting with Omeprazole, and what the gastroenterologist said, when plaintiff seen him at Pinellas County jail.

25. Plaintiff told the doctor that Zantac was not working for him. Plaintiff was then taken off Zantac because it was not working. Plaintiff asked the doctor to change his seizure medication if he was to re-put him back on Omeprazole, because they counteract one another. He put plaintiff back on Omeprazole 20 mg. once daily, and Tums (2) tablets twice daily, due to the fact that Zantac and Omeprazole have two (2) different chemicals and works differently with each person. The doctor did refuse to change my seizure medication, and due to the fact of plaintiff's medications counteracting one another, this puts plaintiff in a situation that is compromising my health.

26. The Omeprazole 20 mg. once daily was working the full 24 hours, as it is supposed to.

27. On 10/1/13, plaintiff saw "Radi Alejandro, the gastroenterologist for an upper G.I. scoping procedure. After the procedure, the doctor told plaintiff what he was

diagnosed with. He said plaintiff had holes in his stomach liner, and that plaintiff has chronic GERD, upper G.I. and that his stomach is producing more acid than it is supposed to be. Plaintiff signed a DOC Medical Reception Center Surgical Patient Discharge Planning Summary. At the bottom of the DOC Medical Reception Center Surgical Patient Discharge Planning Summary the doctor recommended Prilosec every morning, Tums after meals 2 times daily; he recommended these medications for 8 weeks.

28.    Also, along with these medications, plaintiff was on a special diet for his stomach issues. This diet is known as a Low Residue Diet. At both of plaintiff's appointments with the gastroenterologist at DOC Medical Reception Center (Lake Butler R.M.C.), plaintiff told the stomach specialist that Omeprazole 20 mg. is working for the full amount of time, since plaintiff had stopped taking his seizure medicine. He told plaintiff to get another seizure medicine that does not counteract with Omeprazole and to stay on a Low Residue Diet because plaintiff has holes in his stomach liner, along with chronic GERD and upper G.I. and that plaintiff stomach is producing excessive acid.

29.    Upon plaintiff's return to Wakulla C.I., Main Unit, plaintiff was told to put in a sick call to renew his diet pass for Wakulla C.I., around 11/4/13 or 11/5/13. At sick call on 11/6/13, to renew plaintiff's diet pass (low residue) the nurse took plaintiff's diet pass and stated. "There are no more low residue diets," then   MS. KIRKLAND / A.R.N.P, told her to take plaintiff's diet pass because I do not meet the recommendations of special diet.

30.    Plaintiff filed another grievance (Log #1311-118-088). Furthermore, plaintiff has all reason to believe that MS. KIRKLAND / A.R.N.P, had taken plaintiff's low residue

diet away due to the fact that plaintiff has filed several grievances against her, for her inadequate medical care and deliberate indifference with the issues plaintiff has had with his stomach. This retaliation act against plaintiff for writing-her-up. Again, this shows a series of some kind of retaliation act toward plaintiff.

31.    On 11/12/13, plaintiff had another appointment to see MS. KIRKLAND / A.R.N.P. As plaintiff was taking his vital signs, MS. KIRKLAND came in. Plaintiff mentioned about his diet pass and she told plaintiff that "He did not qualify for it." Then plaintiff mentioned about changing his seizure medication and again she refused to change plaintiff's seizure medication, and refill his Omeprazole, and told plaintiff that he "Can buy Zantac off the Canteen." And then she stated that "Corizon does not fill Omeprazole," and then cancelled my appointment. Furthermore, she did not even review plaintiff's medical chart after coming back from Lake Butler R.M.C., seeing the gastroenterologist to even know what is wrong with plaintiff or to see what doctor recommended. Plaintiff requested pain medication and she said NO, and told plaintiff to leave. Once again, plaintiff was vomiting up everything that plaintiff ate or drank.

32.    On 12/5/13, plaintiff's grievance (Log #1311-118-088) was denied. Plaintiff appealed the grievance on 12/11/13, and sent a copy of an Exhibit that shows "inadequate medical treatment" by medical and MS. KIRKLAND / A.R.N.P., with this appeal. The grievance appeal (Log # 13-6-40853) was received by "Secretary, Florida Department of Corrections" on 12/17/13.

33.    On 12/17/13, plaintiff put in his last prescription of Omeprazole to get it refilled before it expired on 12/23/13. Plaintiff handed his prescription to D. E. WARD / L.P.N., at the pill window around lunchtime.

34.    On 12/23/13, plaintiff had still not received his last prescription with which is his treatment of medication that the gastroenterologist (Radi Alejandro) recommended and was approved through the State and was given to treat plaintiff's stomach issues.

**PAGE 9f**

35.    On 12/23/13, after lunch plaintiff went to the pill window to find out what the delay was with his medication. "MS. WARD / L.P.N., told plaintiff that his medicine has not come in and that she would check on it for plaintiff." When she came back, MS. WARD told plaintiff that "it expired today" (12/23/13). Plaintiff stated, "...that he put in the prescription in on the 17th of December and asked if she would correct this error at hand" she said "NO" because she was not going to correct her error, and to file a grievance.

36.    On 12/24/13, plaintiff filed another grievance (Log # 1312-118-204).

37.    On 1/13/14, plaintiff's grievance (Log # 1312-118-204) was denied.

38.    Plaintiff filed an appeal on said grievance above to "Secretary, Florida Department of Corrections" (Log # 1401-118-148).

39.    Every grievance, except one, that the plaintiff filed had been denied by Asst. Warden C. Swier. The only grievance not denied by Asst. Warden C. Swier was Log #1212-118-044.

40.    Within one month from 12/26/13 through 12/23/14, plaintiff had done several sick-calls, wrote to Health Service Administration, and filed grievances and appealed those denied grievances as well, additionally the above plaintiff has also done medical emergencies.

41.    On 1/23/14, plaintiff did a psych emergency because the plaintiff felt that Medical and MS. KIRKLAND / A.R.N.P., was trying to harm and/or kill him by not treating plaintiff for his stomach issues adequately and giving plaintiff medications that he is not supposed to take with other medications...also on 1/23/14, plaintiff told psych medical staff Capitan Washington and Sgt. Young at Wakulla C.I. Main Unit, that he was going on a hunger strike that day and that he has not eaten for the past two or three meals.

PAGE 9g

42.   Later on, on 1/23/14 plaintiff went to confinement.

43.   While plaintiff was back in confinement, plaintiff followed through with a hunger strike and signed a "Refusal to Eat" form (which should be in plaintiff's medical jacket) and went (5) five days without eating anything until he was seen by the doctor on 1/27/14.

44.   Doctor Gaspard R. went through plaintiff's whole medical chart and stated, "A.R.N.P., MS. KIRKLAND should not have gone this long neglecting patient with the issues  that patient has with his stomach."   Doctor Gaspard R. had no prescribed plaintiff Protonix, Zantac, and Simethicon, along with reinstating plaintiff's low residue diet to help lower the acid he is producing. Doctor Gaspard R. had no problem finding all the statements, recommendations and pictures of plaintiff's stomach that the gastroenterologist produced on 10/1/13.

45.   On 2/10/14, plaintiff's appeal (Log #1401-118-148) was denied. Plaintiff's appeal grievance above was improperly handled due to the fact that this is an appeal grievance with which should have been answered by the "Secretary, Florida Department of Corrections" not the Asst. Warden C. Swier.  The handling of this appeal grievance was against proper procedures (F.A.C.) with which hindered the plaintiff of moving to the next step of his due process.  Plaintiff sent a request form to Asst. Warden C. Swier informing her of her improper handling of plaintiff's appeal grievance (Log #1401-118-148) and a copy of the mis-handled appeal grievance. Asst. Warden C. Swier received plaintiff's request on the morning of 2/28/13. Asst. Warden C. Swier sent this appeal grievance to "Secretary, Florida Department of Corrections" informing Nancy Ann Bowden, secretary specialist of her improper handling on plaintiff's appeal grievance at hand. Plaintiff's appeal grievance Log #14-6-07718 was received on 3/4/14.

**46.**    On 2/14/14, plaintiff's appeal grievance Log #13·6·40853 was denied after almost two (2) full months.  This is improper procedure and handling, with which is as well hindered plaintiff his due process rights to move forward.

**47.**    The "Secretary, Florida Department of Corrections" has only 30 days to respond to an appeal, unless the appeal is signed "By signature, inmate agrees to the following number of 30·day extensions."   In plaintiff's case, he did not agree to the 30 day extensions by his signature.

**48.**    On the above issue, plaintiff's appeal grievance Log #13·6·40853, the time frame of the improper procedure and handling is from the time the "Secretary, Florida Department of Corrections" receives plaintiff's appeal grievance on 12/17/13. "Secretary, Florida Department of Corrections" denied plaintiff's appeal grievance on 2/14/14.  But, the stamp of "Florida Department of Corrections Inmate Grievance Appeal" is dated on 2/19/14.  By this improper procedure and handling, it has caused plaintiff more pain and suffering and it hindered plaintiff from moving forward with a further remedy.

**49.**    On the grievance that Asst. Warden C. Swier twice denied, with which it is improper procedure and handling, then "Secretary, Florida Department of Corrections" received plaintiff's appeal grievance (Log #14·6·07718) on 3/4/14, it was denied on 5/3/14, once again?

**50.**    Plaintiff has paperwork with which to back·up all his claims and more, along with witnesses.

**51.**    Plaintiff was denied adequate medical care by Defendant Corizon Health, Inc., in accordance with it's policy and custom to provide medical services to the inmate population for Florida Department of Corrections, due to the wrongful acts and

PAGE 9i

omissions of its subordinate(s), who agreed to comply with all policies of medical care upon being employed by Corizon.

52.     Plaintiff seeks to hold Corizon liable for the reckless conduct of its medical staff as described herein.

**PAGE B-1**

BRIEF MEDICAL STATEMENT:

1.　　Plaintiff arrived at the Florida Department of Corrections on or about January 12, 2012. After being in the Florida Department of Corrections about a week, plaintiff started vomiting up everything plaintiff ate or drank. After vomiting up blood plaintiff declared a medical emergency.

2.　　Plaintiff was transferred to another institution and upon arriving there plaintiff was still vomiting up everything he at and drank: water and occasionally blood. The plaintiff did sick-calls and medical emergency procedures for the vomiting up of everything he ate or drank and blood.

3.　　For over two years plaintiff complained and repeatedly filed sick-calls and medical emergencies for vomiting food, drinks, water and blood.

4. Plaintiff saw MS. KIRKLAND / A.R.N.P., several times on repeated issues with which she did not treat plaintiff properly, giving him the wrong medication, not exhausting all medical remedies available, failing to seek out what was wrong with plaintiff, and overlooking the gastroenterologist's diagnosis and recommendations.

　　Plaintiff became unable to participate in any activities as follows:
   a.  Sleeping;
   b.  Eating, drinking water;
   c.  School;
   d.  Programs;
   e.  Physical exercise;
   f.  Interaction with other inmates

Due to vomiting-up of everything he ate, drank, and blood.

5.　　Plaintiff filed several formal grievances, and grievance appeals with which all were denied and/or overlooked, ignored, while he was given wrong medication, not treated properly and medical care failed to exhaust all remedies to find out what was causing plaintiff to vomit food, water, and blood. And, by ignoring plaintiff's medical issues and properly treating the maladies, it has caused plaintiff's stomach issues to

PAGE B-2

worsen over that which they were since the medical issue was first encountered and reported; worsened over a period of time.

6.     The above claim that Plaintiff is claiming is all in violation of state and federal laws, which also violates the U.S. Constitution and rights of prisoners and the ADA to have adequate medical care.

7.     Plaintiff has some proof of claims, and the other proof can be found in the plaintiff's medical jacket (medical records).

**PAGE B-3**

### FIRST CAUSE OF ACTION

1.     The deliberate indifference, reckless and callous disregard of DEFENDANT CORIZON HEALTH, INC., through "wrongful acts and omissions of its subordinates" as herein described violated the Plaintiff's Eighth Amendment constitutional rights stating a cause of action for relief and liability.

### STATE CLAIM
### SECOND CAUSE OF ACTION

2.     The intentional negligence of DEFENDANT CORIZON HEALTH, INC., through "wrongful acts and omissions of its subordinates" as herein described constituted a wanton and willful disregard stating a cause of action for relief and liability.

### THIRD CAUSE OF ACTION

3.     The deliberate indifference, reckless and callous disregard of DEFENDANT KIRKLAND as herein described violated the Plaintiff's Eighth Amendment constitutional rights stating a cause of action for relief and liability.

### FOURTH CAUSE OF ACTION

4.     The "retaliatory conduct" of DEFENDANT KIRKLAND as herein described violated the Plaintiff's First Amendment constitutional rights stating a cause of action for relief and liability.

### FIFTH CAUSE OF ACTION

5.     The "retaliatory conduct" of DEFENDANT SWIER as herein described violated the Plaintiff's First Amendment constitutional rights stating a cause of action for relief and liability.

### SIXTH CAUSE OF ACTION

6.     The "intentional neglect" of DEFENDANT KIRKLAND by the wrongful acts and omissions of providing inadequate medical care, as herein described constituted a wanton and willful disregard stating a cause of action for relief and liability.

PAGE B-4

STATE CLAIM
SEVENTH CAUSE OF ACTION

7.   The intentional negligence of DEFENDANT WARD as herein described constituted a wanton and willful disregard stating a cause of action for relief and liability.

PRAYER FOR RELIEF:

**WHEREFORE,**  plaintiff claims judgment against each defendant jointly and severally for direct violations of his first and eighth amendment constitutional rights, and for recovery,[1] seeks the following:

a. DEFENDANT CORIZON HEALTH, INC.:

$500,000.00 in compensatory damages;
$150,000.00 in punitive damages

b. DEFENDANT KIRKLAND:

$100,000.00 in compensatory damages;
$50,000.00 in punitive damages

c. DEFENDANT WARD:

$100,000.00 in compensatory damages;
$50,000.00 in punitive damages

d. DEFENDANT SWIER:

$250,000.00 in compensatory damages;
$100,000.00 in punitive damages

I DECLARE UNDER PENALTY OF PERJURY, that the foregoing *Plaintiff's Amended Civil Rights Complaint*  and the statement of facts herein are true and correct. Executed on this _29_ day  of May 2015.

/s/ _____
Chad C. Covert, #R67023, *pro se*

Attached:  Certificate of Service (PAGE B-5).

---

[1]  If possible, negotiate a settlement of commutation in regards to the plaintiff's current sentence.

PAGE B-5

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that a true and correct original of this *Plaintiff's Amended Civil Rights Complaint,* and one true and correct copy for each Defendant has been furnished to the Clerk of Court, U.S. District Court, 111 North Adams Street, Suite 322, Tallahassee, Florida 32301-7730, by placing same into the hands of institutional officials for mailing via U.S. Mail, postage prepaid, on this *29* day of May 2015.

Chad C. Covert, #R67023, *pro se*
Liberty Correctional Institution
11064 N.W. Dempsey Barron Road
Bristol, Florida 32321-2622
Plaintiff

Chad C Ewen
R670023 / B2-48 S
Liberty C.I.
11864 NW Dempsey Barron Rd.
Bristol, Fla 32321

from
Liberty Correctional
Institution

US POSTAGE >> PITNEY BOWES

ZIP 32321  $ 003.08⁰
0001370342 JUN. 01. 2015



United States District Court
North District of Florida
111 North Adams St, Suite 322
Tallahassee, Fla 32301-7730

**LEGAL MAIL**